AO 93 (Rev. 04/10) Application for a Search Warrant

FILED ENTERED
LODGED RECEIVED

MAR 24 2014

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. MJ14-125
SMS/Text Communications and Content for Cellular )
Telephone Assigned # 425-760-1796, with Service )
Provided by Cellco Partnership DBA Verizon Wireless )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
SMS/Text communications and content for cellular telephone assigned # 425-760-1796, with service provided by cellco partnership DBA Verizon Wireless, more fully described in Attachment A, attached hereto, incorporated herein.

located in the ____Southern____ District of ____New York____, there is now concealed *(identify the person or describe the property to be seized)*:
Please see Attachment B, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. § 841 | Distribution of a Controlled Substance |

The application is based on these facts:
Please see attached Affidavit of Brady Wilson, Special Agent, DEA

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

BRADY WILSON, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/24/2014

_____
*Judge's signature*

City and state: Seattle, Washington    DEAN BRETT, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

STATE OF WASHINGTON  )
                      )  ss
COUNTY OF KING        )

I, BRADY WILSON, a Special Agent with the Drug Enforcement Administration in Seattle, Washington, having been duly sworn, state as follows:

## AFFIANT BACKGROUND AND INTRODUCTION

1. I am a Special Agent (SA) of the Drug Enforcement Administration (DEA) and have been so employed since February 5, 2010. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7). I am currently assigned to the Seattle Field Division, Financial Investigations Group. I graduated from Seattle University School of Law with a Juris Doctor and worked as a Deputy Prosecuting Attorney at the Pierce County Prosecutor's Office in Tacoma, Washington prior to my employment with DEA.

2. I attended and graduated from the DEA Office of Training, Basic Agent Training Program where I received approximately 650 hours of specialized drug-related investigative training. This training included drug identification, drug-related investigative techniques, interview and interrogation training, preparation and execution of search warrants, tactical application of drug enforcement, surveillance and electronic monitoring techniques, money laundering investigations, and asset identification and forfeiture.

3. In my capacity as a Special Agent, I conduct investigations of the Controlled Substances Act, that is, Title 21, United States Code, Sections 841, et seq., and related offenses. I have participated in numerous drug and money laundering investigations which have involved the use of a variety of law enforcement techniques, including the use of confidential sources and undercover officers, physical surveillance, electronic surveillance, wire surveillance, pen register and telephone toll analysis, Title III intercepts, investigative interviews, the preparation and service of search and arrest

warrants, reviews of taped conversations, and the review of records commonly associated with drug traffickers and money launderers.

4. Pertinent to this application, I have also become familiar with how drug traffickers commonly use cellular telephones, including the short message service (SMS, or text message) feature of cellular telephones to further their drug trafficking activities. Drug traffickers, like anyone engaged in any type of legal or illegal business, have a compelling need to communicate with both their customers and their suppliers. Based on my training and experience, drug traffickers use cellular telephones to accomplish that purpose. It is common to find relevant evidence of trafficking activity when searching the cellular phones of drug traffickers, and by extension, the stored text communications related to those phones. Indeed, assuming the correct phone is identified, it is my experience that it is unusual to not find such evidence.

5. The facts in this affidavit come from my personal participation in the investigation to date, my training and experience, information obtained from other law enforcement officers and witnesses, surveillance, interviews, and a search warrant executed by Monroe Police Department (MPD). Individuals referenced in this Affidavit were identified primarily by using their state-issued driver's licenses and surveillance. Throughout this affidavit, I have attempted to conceal the identity of individuals that have provided information herein so as to protect them from potential retaliation while still trying to provide enough information for a fair analysis of probable cause for the requested warrant(s)/order(s). For this reason, in some instances I have used the names of individuals when I believe that information is relevant to the probable cause while in other instances I have left out the names as not relevant to the probable cause. I have not included every fact known concerning this investigation. I have set forth the facts that I believe are necessary for a fair determination of probable cause for the requested warrant(s)/order(s).

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## PURPOSE OF AFFIDAVIT

6. This affidavit is being submitted in support of an Application for a Search Warrant for stored SMS/text content from Cellco Partnership DBA Verizon Wireless for cellular telephone, 425-760-1796 (the Target Telephone), with service provided by Cellco Partnership DBA Verizon Wireless. I sent an administrative subpoena to Cellco Partnership DBA Verizon Wireless on March 11, 2014 requesting subscriber information, among other things, and am currently awaiting a response. I sent a preservation letter on March 13, 2014 requesting that it preserve the contents of any SMS/text communication or file stored by or for the Target Telephone and any associated accounts, pending further legal process. I confirmed that the preservation letter was received by Cellco Partnership DBA Verizon Wireless and assigned preservation record number 1703482.

7. As set forth below, there is probable cause to believe that 425-760-1796 is being used by Daniel Clements in violation of Title 21, United States Code, Section 841 (Distribution of a Controlled Substance), and specifically that the SMS/text function of the Target Telephone is used to facilitate that distribution.

## SUMMARY OF PROBABLE CAUSE

## SUMMARY INFORMATION REGARDING DISTRIBUTION OF DRUGS

8. Since approximately July of 2013 I have been investigating illegal drug activity at a residence owned by Denise Bruce in Monroe, Washington, located at 20518 Corbridge Road SE (the BRUCE RESIDENCE). My investigation began when I learned from MPD that local Sources of Information had reported that Denise Bruce allowed Daniel Clements to live at the BRUCE RESIDENCE and to sell illegal drugs out of the house. During both search warrants served at the residence in late 2013 (described in greater detail below), MPD officers located items of residency for Clements in one of the upstairs bedrooms, corroborating this information, including his clothes and other personal items, as well as notebooks and handwritten letters dated back to at least early 2013.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

9. Since approximately May of 2013, MPD has received numerous complaints from neighbors about drug activity, and MPD surveillance has observed "short stay" activity at the house, consistent with illegal drug sales and use. "Short stay" traffic means observing people arriving at a suspected drug distribution location and staying just long enough to exchange cash for controlled substances.

10. In addition, MPD has conducted traffics stops of a number of individuals leaving the BRUCE RESIDENCE, and has recovered illegal drugs and drug paraphernalia from the vehicles. On September 5, 2013, Daniel Clements was arrested after such a vehicle stop, at which a "heroin kit" (a kit containing the items used to ingest heroin), syringes, a spoon, small baggies, and heroin "residue" were found in the car. MPD has also arrested other individuals leaving the BRUCE RESIDENCE after a short-stay.

11. On October 2, 2013, MPD officer Paul Ryan responded to a purported heroin overdose at the BRUCE RESIDENCE. Daniel Clements was at the residence at the time of the overdose.

12. In October of 2013, MPD officers served two search warrants at the BRUCE RESIDENCE. Officers located heroin, paraphernalia, prescription tablets, baggies, pipes, a drug ledger, and handwritten notes of drug activity at the house, among other things. On October 25, 2013, Daniel Clements was arrested at the BRUCE RESIDENCE after the execution of one of the search warrants.

13. On October 10, 2013, MPD Officers Kornish and Erdmann and I interviewed Denise Bruce regarding the overdose and drug activity at her residence. Bruce said, "I assumed what happened...that somebody overdosed." She then told me that everyone at the house uses illegal drugs and that "Dan [Clements] does have some" and that he "keeps it in the house." She also admitted that she obtains illegal drugs from Clements.

14. The surveillance and arrests summarized above, along with the evidence obtained through two search warrants and the admissions of Denise Bruce, lead me to the

conclusion that illegal drug activity is occurring and has occurred at the BRUCE RESIDENCE.

CONTROLLED PURCHASES AND TEXTS MESSAGES

15. On February 11, 2014, MPD Officers arrested an individual and conducted a debrief of that individual regarding her/his knowledge of drug trafficking in and around Monroe, Washington.[1] The individual indicated that s/he had purchased heroin as recently as the summer of 2013 from Denise Bruce inside of the BRUCE RESIDENCE and that s/he had purchased heroin as recently as the first week of February, 2014, from Daniel Clements inside of the BRUCE RESIDENCE with Denise Bruce present and involved in the transaction. The individual further indicated that Denise Bruce and Daniel Clements recently changed their method of operation in response to frequent police activity and the arrest of individuals leaving the BRUCE RESIDENCE. Specifically, the individual told officers that Bruce and Clements were not allowing people that arrived to purchase illegal drugs to leave until after a certain amount of time had transpired, to avoid the observation of short-stay drug activity by any officers doing surveillance on their residence. As described above, MPD officers have served two search warrants on the BRUCE RESIDENCE within the last six months and at least one of the affidavits for the warrants describes frequent short-stay drug activity as part of the probable cause for the warrant.

Controlled Purchase No. 1

16. Soon after the debrief of this individual, MPD Officers utilized her/him (CS1) to conduct a controlled purchase of heroin from the BRUCE RESIDENCE

---

[1] This individual was initially stopped by MPD for Driving with an Altered Trip Permit. Pursuant to that stop, officers located stolen property, a small amount of heroin residue and a "heroin kit." In March of 2014, Washington State Patrol stopped this individual for Expired Tabs and located a small amount of heroin residue, a "heroin kit," and a small amount of crystal methamphetamine in the vehicle. This individual has one conviction for Possession of Drug Paraphernalia and has a pending Theft in the Third Degree charge from mid-2013. This individual has agreed to cooperate with law enforcement in consideration for a reduction or dismissal of her/his pending charges. I, along with MPD Officers, have been able to corroborate/verify her/his information. Further, this individual has provided information regarding her/his actions outside of law enforcement control and has been forthright and truthful regarding those actions, despite the fact that this information could jeopardize this individual's Confidential Source contract with MPD.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(throughout the controlled purchases and attempts described herein, CS1 called and/or texted Clements on the Target Telephone in order to set up or attempt to set up the purchases; the content of these calls/texts is detailed below). As set forth herein, CS1 operated under law enforcement surveillance, and much of the information he/she provided is corroborated by surveillance or by other means.

17. I first learned that the Target Telephone is used by Daniel Clements from MPD Officer Kornish, who indicated to me that the Target Telephone number showed up on several phone downloads done by MPD for phones seized from individuals involved in drug trafficking during the timeframe discussed in this affidavit in which the Target Telephone was listed in the contact lists of those phones for "Dan," or some variation thereof. This was further verified in the telephone contact list used by CS1, in which s/he lists the Target Telephone number as associated to "Dan Clemens" [sic]. Further, Officer Kornish indicated to me that, while CS1 has had verbal contact with Clements on the Target Telephone during these controlled purchases and attempts, he has heard the individual speaking on the Target Telephone, and has identified that person as Daniel Clements.

18. MPD Officers indicated to me that CS1 was searched and made free of any contraband and/or currency other than what was provided by MPD officers for the purpose of purchasing heroin from Daniel Clements inside of the BRUCE RESIDENCE. MPD officers further indicated that they observed CS1 walk directly to the BRUCE RESIDENCE, enter, and remain inside for approximately 10 minutes. After approximately 10 minutes, MPD officers indicated that CS1 emerged from the BRUCE RESIDENCE, returned directly to controlling officers, and turned over a small piece of suspected heroin (later field tested positive). Nothing else was found following a search of CS1. Following the controlled purchase, CS1 indicated that s/he went into the BRUCE RESIDENCE where s/he met with Daniel Clements who broke off her/his piece of heroin from a larger piece, and indicated that Clements had approximately one ounce of heroin on his person. Denise Bruce was not present at the BRUCE RESIDENCE

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

when this controlled purchase occurred.

### Controlled Purchase No. 2

19. Approximately one week later, investigators conducted another controlled purchase of heroin from the BRUCE RESIDENCE using CS1. MPD Officers Kornish, Erdmann, and Irving, along with DEA Special Agent (SA) Joseph Peres, met with CS1 prior to attempting the controlled purchase, searched, and debriefed CS1. No items of contraband were located on CS1. Following the search and debriefs, SA Peres and I, along with MPD Officer Erdmann, established surveillance at the BRUCE RESIDENCE. Several minutes after establishing surveillance, Officer Erdmann observed Denise Bruce leave the residence with a male in a vehicle. Approximately 45 minutes later, Officer Erdmann observed Bruce and the male return and enter the residence. During this timeframe, CS1 placed several calls to Clements in an attempt to set up the purchase; however, Clements did not answer any of CS1's calls (CS1 was using a different phone provided by MPD).

20. Approximately 15 minutes after Bruce returned, Officer Erdmann observed CS1 knock on the door of the BRUCE RESIDENCE. After approximately one minute, I heard, via the transmitting device that CS1 was wearing, a male voice at the door. At that same time, Officer Erdmann indicated that he saw a male answer the door. I heard CS1 say, "I called and left a message" in response to the male's question of whether s/he called first. I know that CS1 only left a message for Clements and therefore believe that the male then said, regarding Clements, "He told me to tell you…uh…to make sure and get a hold of him first" and that, "I'm just the door guy." After this, the male appeared to close the door and re-enter the house.

21. Several minutes later, Officer Erdmann indicated that the door opened back up and CS1 went inside. Soon after CS1 entered, I heard a male voice (later identified as Daniel Clements, from a debrief of CS1) say "[...] tried calling me a bunch of times [...] restricted." (The CS had attempted to contact Clements multiple times via telephone from a restricted number.) I also heard an unidentified female voice say, "Don't go in

there." After that, for approximately the next 3-4 minutes, I could hear conversation, and specifically heard questioning from Clements about how CS1 got to the house and questions about the location of CS1's ride away from the BRUCE RESIDENCE following the drug transaction.

22. After approximately 5 minutes inside the house, CS1 left out the front door. At about the time CS1 left, Officer Erdmann indicated that he believed that blinds to one of the front windows cracked open and that it appeared that somebody was looking out the window at CS1. Ultimately CS1 was watched by MPD Officers until s/he met back up with Officers Kornish and Irving where s/he turned over the purchased, suspected heroin (this later field tested positive and weighed approximately .6 grams). No other items of contraband were located on CS1. CS1 indicated that he heard Denise Bruce's voice in her bedroom during this transaction. CS1 indicated that s/he wanted to go into Denise Bruce's bedroom to talk to Denise Bruce but was told by one of the occupants to not go in there. CS1 also indicated that the door to Daniel Clements' bedroom was open during the purchase.

Controlled Purchase No. 3 (Attempted)

23. A week later, investigators attempted a controlled purchase from the BRUCE RESIDENCE using CS1 but did not succeed in buying heroin. However, Denise Bruce texted CS1 several times from her cellular telephone, explaining to CS1 how the purchase could not be made at that time because "Nobody here has anything" and signed the text, "-~Denise~-"; Bruce also texted CS1 that she did not know when Clements would re-up because he was sleeping.[2]

Controlled Purchase No. 4 (Attempted)

24. In early March of 2014, investigators utilized CS1 again to attempt to purchase heroin from the BRUCE RESIDENCE. On the first attempt, Daniel Clements

---

[2] I am not seeking a search warrant for stored content text messages for the cellular telephone of Denise Bruce because Sprint does not provide that service to law enforcement; Denise Bruce's cellular telephone is a Sprint phone.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

indicated to CS1 via a voice call from the Target Telephone that he was "heading out to Everett right now to get some more"; investigators also learned, via a text from Denise Bruce, that she was not home and would likely not be home that evening. As a result, the operation was suspended until the next day.

Controlled Purchase No. 5 (Attempted)

25. The following day, investigators attempted a controlled purchase from the BRUCE RESIDENCE using CS1 but did not succeed in buying heroin. Initially on that day, there were no responses from Denise Bruce or Daniel Clements to CS1's contacts. However, later that day, Denise Bruce texted CS1, "Dan is out. PLEASE DON'T COME BY UNTIL YOU HEAR FROM US." Several hours later, CS1 got a text from Daniel Clements using the Target Telephone wherein Clements said, "Im leaving to go get some rite now. 2 hrs. or so." About two hours later, investigators observed Daniel Clements leave with a female, a known drug user, and drive to a parking lot of a local store in Everett, Washington. There, I observed Clements jump out of the passenger seat of the vehicle he was riding in and meet with a then-identified white male in the white male's SUV. Surveillance was briefly lost, but I later observed Clements north of the first parking lot standing in a parking lot of a bar in Everett speaking with an unidentified Hispanic male and unidentified white male. Shortly after observing this, I observed Clements getting picked up by the female that drove him to Everett. Clements and the female then left Everett.

26. About an hour upon leaving Everett, and in response to CS1, Clements texted CS1 using the Target Telephone, "Dnt have any." Shortly thereafter, CS1 asked if Clements had re-supplied, and Clements texted CS1 using the Target Telephone, "Yea, and I just sold out!! Crazy!!", so the operation was cancelled. However, shortly after the deal was cancelled, according to CS1, Denise Bruce texted CS1 and said that Daniel Clements was going to re-up and then texted CS1 when Clements returned. However, no controlled purchase was completed.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CONCLUSION

27. Based upon the above-stated facts there is probable cause to believe that **425-760-1796** is being used in violation of Title 21, United States Code, Section 841 (Distribution of a Controlled Substance), and specifically that, the SMS/text function of **the Target Telephone**, is used to facilitate that distribution. Specifically, I believe from these facts, that Daniel Clements uses the SMS/text function of **the Target Telephone** to arrange for the sale of illegal drugs and to arrange for his re-supply of those drugs. I further respectfully submit that there is probable cause to believe that a search of the stored SMS/text messages in Verizon's possession will yield evidence of these violations.

_____
BRADY WILSON, Affiant
Special Agent
Drug Enforcement Administration

SUBSCRIBED AND SWORN before me this __24__ day of March, 2014.

_____
THE HONORABLE DEAN BRETT
United States Magistrate Judge

AFFIDAVIT OF SA BRADY WILSON - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# ATTACHMENT A

1. **Items to be to be Provided by Cellco Partnership DBA Verizon Wireless for Search:**

All electronically stored SMS/text content associated with cellular telephone 425-760-1796, maintained, controlled, or operated by Cellco Partnership DBA Verizon Wireless, related to preservation record number 1703482.

# ATTACHMENT B

1. **Items to be to be Provided by Cellco Partnership DBA Verizon Wireless for Search:**

All electronically stored SMS/text content associated with cellular telephone 425-760-1796, maintained, controlled, or operated by Cellco Partnership DBA Verizon Wireless, related to preservation record number 1703482 including but not limited to:

   a. All subscriber records associated with the specified account, including 1) name; 2) address; 3) length of service; 4) detailed billing records/logs; 5) means and source of payment; and 6) lists of all related accounts;

   b. All text, picture or video messages sent and received by subscriber.

2. **Items to be Seized**

All electronically stored SMS/text content associated with cellular telephone 425-760-1796, maintained, controlled, or operated by Cellco Partnership DBA Verizon Wireless, related to preservation record number 1703482 that constitutes evidence, fruits and instrumentalities of violations of the Controlled Substances Act; specifically, Distribution of a Controlled Substance, contrary to Title 21, U.S.C.§ 841.

   a. All subscriber records associated with the specified account, including 1) name; 2) address; 3) length of service; 4) detailed billing records/logs; 5) means and source of payment; and 6) lists of all related accounts;

   b. Text, picture or video messages sent and received by subscriber related to any and all crimes listed above.